UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-3089(DSD/JJG)


Nancy Sager,

        Plaintiff,

v.                                                                    **ORDER**

Dr. Francis J. Harvey, Secretary,
Department of the Army,

        Defendant.


    Stephen M. Thompson, Esq., Tammy P. Friederichs, Esq.
and Friederichs & Thompson, 1120 East 80th Street, Suite
106, Bloomington, MN 55420, counsel for plaintiff.

    Mary L. Trippler, Assistant United States Attorney, 300
South Fourth Street, Suite 600, Minneapolis, MN 55415,
counsel for defendant.


This matter is before the court upon defendant's motion to dismiss and for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court denies defendant's motion.


**BACKGROUND**

Plaintiff Nancy Sager ("Sager") commenced this action against defendant Dr. Francis J. Harvey, Secretary of the United States Army, alleging claims of sexual harassment and reprisal discrimination under Title VII of the Civil Rights Act of 1964. Sager was a probationary employee of the United States Army from July 2003 to February 19, 2004. Throughout her probationary

employment, she worked as a lead human resources assistant at the Minneapolis Military Entrance Processing Station, Minneapolis, Minnesota.   Robert Parshall ("Parshall") was Sager's direct supervisor.   In this action, Sager claims that Parshall sexually assaulted her shortly after she began work and continued to sexually harass her throughout her employment with the Army.  (See Sager Aff. ¶¶ 3-11.)   Sager further claims that she began to receive unwarranted disciplinary warnings after she rejected Parshall's advances and reported interoffice sexual activity and that she was ultimately terminated in retaliation for contacting the Equal Employment Opportunity Commission ("EEOC") regarding her complaints about Parshall's behavior.

According to Sager, Parshall began harassing her during her first week of employment when he asked her to go on a golf outing but informed her that if she went she would have to share a room with him.  She declined the invitation.  Parshall began to make sexual comments to Sager, some of which referenced the use of handcuffs on her, tying her up and spanking her.  Sager claims that Parshall indicated to her that rejection of his advances would adversely affect her job.  On August 12, 2003, Parshall asked her to go for dinner because it was important that she get to know him better and after dinner she reluctantly agreed to go to a location at Fort Snelling to continue their conversation.  According to Sager, Parshall then sexually assaulted her, which ended when he

ejaculated on her blouse and skirt.  During the assault Parshall told her to "keep quiet and try to like it." (<u>Id.</u> ¶ 6.)  Parshall said "you know what will happen if you report this." (<u>Id.</u>)

After the assault, Sager met with a licensed psychologist, Dr. George V. Komaridis, who wrote a letter to "whom it may concern" dated November 13, 2003.  In his letter, Dr. Komaridis stated that he had been providing psychological therapy for Sager and that she "expressed distress and concern regarding her work environment" and complained of being "sexually assaulted and harassed by her supervisor." (<u>Id.</u> Ex. D.)  Dr. Komaridis recommended that an alternative work position be made available for Sager based on her heightened level of distress.

Following the alleged assault, Parshall continued to call Sager demeaning names, such as "little bitch." (<u>Id.</u> ¶ 9.)  On September 17, 2003, Parshall asked to meet with Sager to conduct a review of her performance and he rated her as successful in all areas except her communication skills, which Parshall said she could improve on by being his "friend." (<u>Id.</u> ¶ 11.)  Sager understood Parshall's comment to mean that she should go along with his sexual advances.  Parshall refused to give her a copy of the evaluation and threw it away.  Sager later determined that she was not due for a performance evaluation on September 17.  On September 26, Sager claims that she entered a file room and observed Parshall with his hands down the back of a female sergeant's pants, and the

pants appeared to be unbuttoned.  She immediately left the room. Sager informed a co-worker about what she observed in the file room and was later asked by Captain Brent R. Cuttell to write a report about the incident.  (Id. ¶ 13, Ex. G.)

Parshall then began to exclude Sager from lunches and would tell her that nobody liked her.  On October 2, Sager informed Major James R. Lorenz that Parshall was sexually harassing her and retaliating against her for reporting the file room incident. Parshall's conduct and animosity towards Sager continued.  On October 10, she was excluded from a meeting that related to her job duties.  Sager told Parshall that his behavior was offensive and unappreciated and that his refusal to listen to her insulted her intelligence.  (Id. ¶ 16.)  On the evening of October 14, Parshall called her to ask if they could be friends, and Sager told him not to make personal phone calls to her.  On October 17, Parshall refused to give Sager a training manual that she had inquired about and told her that he had already trained her and that she was "stupid."  (Id. ¶ 18.)  On October 28, Parshall stared at Sager and told her that he would hide her in a corner, keep her in the dark and "treat her like shit."  (Id. ¶ 19.)  In December, Parshall asked Sager why she would not hug him, and when she rejected his advances he told her to go on welfare.

In addition to these specific allegations, Sager claims that throughout her probationary employment Parshall would say he loved

4

her, stare at her buttocks and inappropriately rub his arm across her breasts.  The only allegations of sexually harassing conduct that are not based on Parshall's conduct are that two of Sager's male co-workers would use the terms "fingerprint bitch" and "fingerprint hoe" in her presence while processing fingerprinting applications.

In September 2003 Sager began to look for information on how to contact an Equal Employment Opportunity officer ("EEO officer") without having to go through Parshall or Cuttell, but was unable to.  On October 29, she asked Parshall how to contact an EEO officer.  He laughed and did not provide the information.  On November 9, she reported the harassment and retaliation to Cuttell but was not informed of the EEO process at that time.  She later requested EEO contact information from Cuttell on December 3.  Two days later, Cuttell provided Sager the requested information.  That same day, December 5, Sager contacted Charles Servantes, an EEO officer, to report sexual harassment.  After she reported the file room incident and commenced informal proceedings with the EEOC, Sager claims that she began to receive a barrage of unwarranted disciplinary actions and false allegations of poor performance by Parshall beginning in November 2003 until her termination on February 19, 2004.[1]

---

[1]  Specifically, Sager claims that although her behavior and performance did not suddenly change she received disciplinary
(continued...)

On December 23, 2003, Sager had an initial interview with Patricia L. Vyncke, an EEO counselor.  In that interview, Sager informed Vyncke of the sexual harassment but did not specifically mention the assault out of fear of retaliation.  During her employment Sager maintained a journal in which she documented the incidents of sexual harassment by Parshall, including a detailed account of the sexual assault on August 12.  Sager told Vyncke that she would need a copy of the journal to proceed, and Vyncke asked that she mail her a copy of the lengthy, handwritten journal.  On January 21, 2004, Sager requested that Vyncke add a claim for reprisal discrimination to her complaint based on conduct that occurred after she began the informal EEOC proceedings.  On February 17, Sager's employment was terminated after she requested leave for injuries sustained in an automobile accident.  The notice of termination cited various areas of job performance by Sager that were not satisfactory.  On February 20, Sager had a final interview with Vyncke and was notified of her right to file a formal complaint within fifteen days of receipt of a right-to-file letter. According to Sager, Vyncke received a complete copy of the entire journal within two weeks of Sager's termination.

---

[1](...continued)
warnings on November 19 and 21; December 3, 5, 8, 9, 10, 11, 29, 30; January 5, 8, 9, 12, 15, 21, 26, 28, 29 and 30; and February 3 and 4.  (Sager Aff. ¶ 29.)

On March 10, 2004, Sager timely filed a formal complaint of discrimination with the EEOC.  (A.R. 11-12.)  Sager checked the appropriate boxes to indicate she believed that she had been discriminated against based on her sex and in retaliation for reporting sexual harassment and observing overt sexual behavior. She wrote that her discrimination claim was based on sexual harassment "from Mr. Parshall" and that her claim for reprisal discrimination was based on her observation of Parshall with the female sergeant in the file room.  (Id.)  Sager also wrote on the complaint that her sexual harassment claim included all issues that she had discussed with Vyncke, that her reprisal claim included items provided to Vyncke and that Vyncke agreed to accept Sager's journal in support of her claims.  (Id.)

On April 29, 2004, the EEOC accepted Sager's claims for investigation.  On December 14, the investigator held a fact-finding hearing at which Sager, Parshall and others testified. Defendant was represented by counsel at the hearing.  Sager was not represented by counsel at the hearing and was not asked any questions regarding the assault.  (Id. Ex. M.)  At the hearing, Sager confirmed that she understood the contents of the journal to be part of the record and evidence of how Parshall had treated her. During her closing statement Sager attempted to address additional examples of harassing conduct that were outside of the testimony produced and was told to limit her closing comments to the issues

that the agency accepted for investigation. (A.R. 585.) She proceeded to state, however, that:

> The second week he started and the third week
> — I believe that's also notated in my journal.
> We didn't get into that today but one of the
> issues in my EEO is sexual harassment from Mr.
> Parshall. And I've gone into it. It's down
> for the record in my journal what happened,
> the things that he did and said. And so he
> had no right as a boss to do that, as a
> supervisor of anybody to do that.
>
> ...
>
> I must say here and now that the treatment
> from Mr. Parshall to me both from a
> professional as a supervisor, the way he
> treated me as a supervisor is beneath anything
> the federal government has seen. I find it
> difficult to believe that somebody would be
> allowed to treat their subordinate that way
> and still be good for federal government. I'm
> sorry. You can't treat someone that way and
> be a good supervisor. I'm sorry. I just
> can't — he's treated me so badly and it's set
> forth in pages after pages, 100 pages all
> together in the journal. If I went through
> all this right now it would take an hour.

(A.R. 591, 594). In response, the investigator told Sager that she did not have to go through the journal because he had a copy of it in the file.

Sager claims that she gave a copy of Dr. Komaridis's letter dated November 13, 2003 — which referenced a sexual assault by her supervisor — to Vyncke, the investigator and defendant's attorney. (Sager Aff. ¶ 7.) Following the fact-finding conference, in a letter to the investigator dated February 17, 2005, Sager wrote that she was "uncertain as to what to do with the skirt, Dr.

8

Komaridis has indeed seen the semen-stained skirt."   (Id. Ex. N; A.R. 115.)

In May 2005, the investigator reported that Sager's claims were based on the following five incidents that had been accepted for investigation: (1) Parshall staring at her buttocks, (2) the observation of Parshall and a female sergeant in the file room, (3) Parshall saying he loved her, (4) derogatory fingerprinting comments made by two male co-workers and (5) comments of a derogatory nature made by a different male sergeant.   The investigator did not include Sager's journal in the investigative record or reference the journal or the assault in the investigative report.   However, Sager had understood that the copy of the journal she gave to the investigator prior to the fact-finding conference was going to be incorporated into the investigation.   According to Sager, at no time did she limit her claim to the five instances of conduct selected by the investigator.   Based upon the results of the investigation, the agency rejected Sager's claims and informed her of her right to a hearing before the EEOC.   (A.R. 1-7.)

Following the investigation, Sager timely requested a hearing before the EEOC on September 7, 2004.   Defendant moved the administrative law judge for findings of fact and conclusions of law without a hearing based on the investigative record.   Sager, who had then retained an attorney, opposed the motion, requested a hearing and filed a pre-hearing submission that included detailed

9

allegations of the sexual assault, "quid pro quo" sexual harassment and supporting documentation that included the journal.  On June 16, 2006, before the administrative law judge ruled on the pending motions, Sager requested a right-to-sue letter to proceed with her action in United States District Court because more than 180 days had passed since she filed her formal complaint.

Sager commenced this action against defendant on July 24, 2006, claiming sexual harassment and reprisal discrimination under Title VII.  Defendant has not answered the allegations.  Instead, defendant filed the instant motion to dismiss and for summary judgment prior to any discovery in this action based on the administrative record.  To the extent plaintiff asserts a claim based on the sexual assault or quid pro quo sexual harassment, defendant argues that dismissal for lack of jurisdiction is warranted under Federal Rule of Civil Procedure 12(b)(1) because she failed to cooperate in good faith during the EEOC's administrative process and did not properly exhaust her administrative remedies as to those claims.  Defendant alternatively argues, albeit in a succinct footnote, such claims are time-barred.  Excluding the assault and claim for quid pro quo sexual harassment, defendant argues that it is entitled to summary judgment under Federal Rule of Civil Procedure 56(c) on the remaining hostile work environment and retaliation claims.

**DISCUSSION**

## I.   Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint for failing to state a claim upon which relief may be granted if, after taking all facts alleged in the complaint as true, it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle her to relief. Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 937 (8th Cir. 2005). Dismissal under Rule 12(b)(6) is warranted "in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004).

When a Rule 12(b)(6) motion presents "matters outside the pleadings," the court treats the motion as one for summary judgment and disposes of it pursuant to Federal Rule of Civil Procedure 56. See Fed. R. Civ. P. 12(b)(6); Blair v. Wills, 420 F.3d 823, 826-27 (2005). Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986).

11

"Matters outside the pleadings" include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 948 (8th Cir. 1999) (internal quotations omitted).  However, when a party moves to dismiss an action for lack of subject matter jurisdiction under Rule 12(b)(1) the court may consider matters extrinsic to the allegations in the complaint because the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 729-30 (8th Cir. 1990) (internal quotations omitted).

## II.   Exhaustion of Administrative Remedies

Under Title VII, the filing of a charge of discrimination with the EEOC and subsequent exhaustion of administrative remedies are jurisdictional prerequisites to commencing litigation. Duncan v. Delta Consol. Indus., Inc., 371 F.3d 1020, 1024 (8th Cir. 2004); Edwards v. Dep't of the Army, 708 F.2d 1344, 1346 (8th Cir. 1983). Exhaustion of administrative remedies allows the EEOC an initial opportunity to investigate discriminatory practices, obtain voluntary compliance and promote conciliation. Shannon v. Ford Motor Co., 72 F.3d 678, 684 (8th Cir. 1996).  Exhaustion also permits an agency to develop a record, exercise its discretion and, if possible, discover and correct its own errors. Edwards, 708

12

F.2d at 1347.  Accordingly, to proceed with litigation a claimant must establish "good faith participation in the administrative process, which includes making specific charges and providing information necessary to the investigation." Briley v. Carlin, 172 F.3d 567, 571 (8th Cir. 1999) (internal quotations omitted).

However, courts are not to use administrative procedures "as a trap for unwary pro se civil rights plaintiffs" and will construe discrimination claims "charitably" when appropriate. Duncan, 371 F.3d at 1025 (internal quotations omitted).  Although a plaintiff may not invent "*ex nihilo*, a claim which simply was not made," the court affords a liberal reading to claims which merely "lack specificity." Shannon, 72 F.3d at 685.  Individuals who file charges with the EEOC often lack legal training and therefore a liberal interpretation of charges is necessary to prevent frustration of the remedial purposes of Title VII. Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 886-87 (8th Cir. 1998); Cobb v. Stringer, 850 F.2d 356, 359 (8th Cir. 1988).

Therefore, a complaint in a subsequently filed lawsuit need not mirror an administrative charge, nor is the scope of the lawsuit confined to the specific allegations in the charge. Duncan, 371 F.3d at 1025.  Rather, the lawsuit can extend to discrimination "like or related to the substance of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge." E.E.O.C. v. Delight

Wholesale Co., 973 F.2d 664, 668 (8th Cir. 1992) (internal
quotations omitted); see also Duncan, 371 F.3d at 1025; B.K.B. v.
Maui Police Dep't., 276 F.3d 1091, 1109 (9th Cir. 2002) (EEOC's
failure to address claim asserted or whether EEOC conducted
investigation not determinative of exhaustion); Cheek v. W. & S.
Life Ins. Co., 31 F.3d 497, 502 (7th Cir. 1994) ("[A]llegations
outside the body of the charge may be considered when it is clear
that the charging party intended the agency to investigate the
allegations.").

An EEOC complaint must also be timely filed, and an individual
alleging sex discrimination in federal employment must contact an
EEO counselor within 45 days of the unlawful practice. Coons v.
Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citing 29 C.F.R.
§ 1614.105(a)(1)).   Unlike exhaustion, compliance with the
statutorily prescribed time limitations is not a jurisdictional
prerequisite to filing suit but rather a requirement subject to
waiver and equitable tolling. Zipes v. Trans World Airlines, Inc.,
455 U.S. 385, 398 (1982); Edwards, 708 F.2d at 1346-47. Although
Title VII claims based on discrete discriminatory or retaliatory
acts must be filed within the relevant time period, under the
continuing violations doctrine claims such as hostile work
environment claims that are based on ongoing and continuous
discrimination are not time barred if "all acts which constitute
the claim are part of the same unlawful employment practice and at

14

least one act falls within the time period." <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 122 (2002); <u>see also</u> <u>Wedow v. City of Kansas City, Mo.</u>, 442 F.3d 661, 673-75 (8th Cir. 2006). However, "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are considered separate acts of discrimination that constitute separate unlawful employment practices. <u>Morgan</u>, 536 U.S. at 114.

In this case, the court concludes that Sager administratively exhausted her Title VII claim for discrimination based on sex, whether premised upon a theory of hostile work environment or quid pro quo harassment, as well as her allegation that her sex discrimination claim includes the alleged assault. As an initial matter, the formal complaint does not require a pro se complainant to discern the nuanced legal distinction that courts have recognized between quid pro quo and hostile work environment claims under Title VII, a distinction not always clear in the context of harassment by supervisors. <u>See</u> <u>Soto v. John Morrell & Co.</u>, 285 F. Supp. 2d 1146, 1172-73 (N.D. Iowa 2003). As the Supreme Court has noted, "[t]he terms quid pro quo and hostile work environment are helpful, perhaps, in making a rough demarcation between cases in which threats are carried out and those where they are not or are absent altogether, but beyond this are of limited utility."

Burlington Indust., Inc. v. Ellerth, 524 U.S. 742, 751 (1998); see also Forshee v. Waterloo Indust., Inc., 178 F.3d 527, 530 (8th Cir. 1999) (distinction "adds little" to Title VII analysis).

The complaint completed by Sager provided a box to check if she believed that she had been discriminated against based upon sex and a small space in which to state the factual allegations giving rise to her complaint. In filing her formal complaint, she checked the boxes necessary to assert claims of sex discrimination and reprisal discrimination. Sager gave the journal to her EEO counselor, stated during the fact-finding conference that the journal was part of the record, confirmed that the investigator had a copy of the journal and was told she did not need to cover its contents. Further, as soon as Sager retained an attorney during the administrative process, the sexual assault and all the contents of the journal were unequivocally raised before the administrative law judge in plaintiff's request for a hearing before the EEOC.

Defendant argues that plaintiff limited her sex discrimination claim to the five incidents accepted for investigation by the agency. However, at no point in the administrative record did Sager express an intent to limit her allegations of sexual harassment to five incidents. To the contrary, she broadly based her claim on "sexual harassment ... from Mr. Parshall" and referenced the contents of the journal. (A.R. 11.) During the fact-finding conference, in response to the investigator, Sager

16

responded that she was prepared to testify as to her allegation that she was "subjected to a hostile environment based on sex," which included "five examples" of conduct.  (A.R. 347-49.)  Based on this acknowledgment, defendant argues that she agreed to limit the scope of her claims and the investigation to the testimony produced and to exclude the assault.  However, this argument not only contradicts the substance of Sager's closing statements but also her subsequent inquiry to the investigator regarding what she should do with the skirt.

Based on the allegations in the formal complaint, the EEOC could reasonably have been expected to investigate the sexual assault and the harassment identified in Sager's journal.  Further, plaintiff's claims for quid pro quo sexual harassment and hostile work environment are predicated in large part on the same facts, the same discriminatory conduct, the same period of time and the same co-workers.  Both claims encompass ongoing and continuous sexual harassment by Parshall that began her first week of work and persisted through her ultimate termination.  Accordingly, even if Sager was required to separately allege quid pro quo harassment as distinct from her claim of hostile work environment, such a claim in this case is "like or related to" the substantive allegations in her charge of discrimination.  Cf. Soto, 285 F. Supp. 2d at 1170-73 (rejecting argument that quid pro quo claim and hostile work

environment claims not reasonably related).  Therefore, plaintiff
has exhausted her administrative remedies on her sex discrimination
claims.

As to defendant's contention that Sager did not participate in
good faith with the agency's investigation, the court disagrees.
With the benefit of hindsight, defendant argues that Sager could
have been more aggressive in guiding the agency's investigation
towards the sexual assault.  However, the scope of the
investigation that ensued was not for Sager to decide or control,
particularly in a pro se capacity.  To the extent she attempted to
raise additional examples of harassing conduct during the fact-
finding hearing, she was told not to.  She detailed the assault in
the journal, offered to provide Vyncke a copy of the journal and
even asked which format would be most convenient for Vyncke.  She
later expressly referenced the journal in the formal complaint.
She incorporated the journal into her closing statements at the
fact-finding hearing and was told the journal was in the file and
that she did not need to go through its contents.  Although
defendant now belabors additional ways Sager could have brought the
sexual assault to the investigator's attention, defendant has not
identified any aspect of the investigation in which Sager refused
to provide requested information or voluntarily participate in the
process.  Contrary to defendant's argument, Sager appears not only
to have cooperated but to have inundated the agency and the

investigator with as much information as possible regarding her claims. Furthermore, any argument that Sager did not intend for the assault to be included in the investigation is belied by her letter to the investigator in which she expressly asked him what he would like her to do with the semen-stained skirt. Therefore, the court rejects defendant's argument that Sager did not participate in good faith during the administrative process.

Lastly, defendant argues that plaintiff's claim for quid pro quo sexual harassment and the allegation of the sexual assault are time barred because they are discrete acts of discrimination. The court disagrees. Plaintiff does not allege the sexual assault was a distinct, isolated act of discrimination by Parshall different in nature or distant in time from the remainder of her claims. See Nichols, 154 F.3d at 887 (allegations of sexual assault not distinct from hostile work environment and can comprise part of a continuing violation under Title VII). Plaintiff's claims and the scope of the fact-finding conference include allegations of ongoing sex discrimination between July 23, 2003, and February 19, 2004, the duration of plaintiff's brief employment. Under the facts of this case, the court concludes that the assault is not time barred because under the continuing violations doctrine it is one of the acts that constitutes the unlawful employment practice of which plaintiff complains, albeit the most egregious.

For all these reasons, defendant's motion to dismiss plaintiff's quid pro quo claim and the allegations of sexual assault under Rule 12(b)(1) for failure to exhaust administrative remedies is denied.

### III.   Motion for Summary Judgment

Defendant moves for summary judgment on plaintiff's hostile work environment and retaliation claims.   In doing so, defendant presumes the hostile work environment claim is limited to the five discrete incidents of harassment that were accepted by the agency for investigation and thereafter rejected.

### A.   Hostile Work Environment Claim

To succeed on a hostile work environment claim based on sexual harassment, plaintiff must show that (1) she belongs to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on her sex, (4) the harassment affected a term, condition, or privilege of employment and (5) defendants knew or should have known of the harassment and failed to take proper action.   See Erenberg v. Methodist Hosp., 357 F.3d 787, 792 (8th Cir. 2004).   Defendant argues that plaintiff is unable to establish a prima facie case because she cannot show that the harassment was severe and pervasive, based on sex or affected a term or condition of her employment.   However, the court finds at this stage in the

litigation genuine issues of material fact exist on each of these issues. Therefore, the court denies defendant's motion for summary judgment without prejudice.

**B.    Retaliation Claim**

To establish a prima facie retaliation claim under Title VII, plaintiff must show (1) that she engaged in protected activity, (2) her employer took an adverse employment action and (3) a causal nexus between the protected activity and the adverse action. <u>Hesse v. Avis Rent-a-Car Sys., Inc.</u>, 394 F.3d 624, 632 (8th Cir. 2005). The court examines a Title VII retaliation claim under the burden-shifting analysis set forth in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973). <u>Id.</u> Defendant argues that plaintiff is unable to establish a nexus between her protected activity — reporting the sexual harassment — and the subsequent adverse employment actions. Defendant further argues that plaintiff is unable to rebut defendant's articulation of a legitimate, non-retaliatory reason for plaintiff's termination, her performance, or establish that defendant's proffered reason is pretext for unlawful discrimination. However, the court finds at this stage in the litigation genuine issues of material fact exist on these issues. Therefore, the court denies defendant's motion for summary judgment without prejudice.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that defendant's motion to dismiss and for summary judgment [Docket No. 5] is denied.

Dated: March 30, 2007

s/David S. Doty
David S. Doty, Judge
United States District Court